● ORIGINAL ● VIA FAX

FILED

08 JUN 16 PM 3: 59

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ C P

DEPUTY

1 **TUCKER ELLIS & WEST LLP**
MICHAEL C. ZELLERS – STATE BAR NO. 146904
2 MOLLIE BENEDICT – STATE BAR NO. 187084
AGGIE B. LEE – STATE BAR NO. 228332
3 515 South Flower Street, Forty-Second Floor
Los Angeles, CA 90071-2223
4 Telephone: 213.430.3400
Facsimile: 213.430.3409
5
6 Attorneys for Defendants BRACCO DIAGNOSTICS INC.
And BRACCO RESEARCH USA INC.
7
8 **UNITED STATES DISTRICT COURT**
9 **SOUTHERN DISTRICT OF CALIFORNIA**
10 MONICO PAYUMO,                          Case No. '08 CV 1062 L LSP
11     Plaintiffs,
12                                         **CERTIFICATE OF SERVICE OF**
                                           **NOTICE TO ADVERSE PARTY OF**
13 v.                                      **REMOVAL OF ACTION TO**
                                           **FEDERAL COURT**
14 GENERAL ELECTRIC COMPANY;
GE HEALTHCARE, INC.; GE
15 HEALTHCARE AS; BAYER
HEALTHCARE LLC; BAYER
16 HEALTHCARE
PHARMACEUTICALS, INC. (f/k/a
17 BERLEX, INC., f/k/a/ BERLEX
LABORATORIES, INC.); BAYER
18 AG; BAYER SCHERING PHARMA
AG (f/k/a SCHERING AG); BAYER
19 HEALTHCARE AG, BAYER
GESELLSCHAFT FUR
20 BETEILIGUNGEN mbH, BAYER
SCHERING, GmbH (f/k/a DRITTE BV
21 GmbH), SCHERING BERLIN, INC.;
MALLINCKRODT, INC.; TYCO
22 HEALTHCARE GROUP, LP;
BRACCO DIAGNOSTICS INC.;
23 BRACCO RESEARCH USA, INC.;
ALTANA PHARMA AG; NYCOMED
24 INTERNATIONAL MANAGEMENT
GmbH; MERRY X-RAY CHEMICAL
25 CORPORATION; MCKESSON
CORPORATION; and DOES 1-50,
26
27
28                          CERTIFICATION OF SERVICE
_____
Tucker Ellis & West LLP    LAimanage/11255/00002/610061/1
515 South Flower, Forty-
Second Floor, Los Angeles
CA 90071-2223              LAimanage/11255/00002/610061/1

| | |
|---|---|
| 1 | |
| 2 | Defendants. |

I, Elizabeth Munnerlyn certify and declare:

1.     I am over the age of 18 years and am not a party to this action.  My business address is Tucker Ellis & West LLP, 515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071-2223, which is located in the city and county and state where the mailing described below took place.

2.     On June 16, 2008, I mailed (via First Class United State Mail) a copy of the Notice to Adverse Party of Removal of Action to Federal Court dated June 16, 2008 (a copy of which is attached to this certificate as Exhibit "A") to counsel for plaintiff.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th day of June, 2008 at Los Angeles, California.


Elizabeth Munnerlyn

Tucker Ellis & West LLP
1000 Wilshire Blvd.
Suite 1800
Los Angeles, CA 90017

2
CERTIFICATION OF SERVICE

LAimanage/11255/00002/610061/1

**EXHIBIT A**

1  TUCKER ELLIS & WEST LLP
   MICHAEL C. ZELLERS-STATE BAR NO. 146904
2  MOLLIE BENEDICT-STATE BAR NO. 187084
   AGGIE B. LEE-STATE BAR NO. 228332
3  515 S. Flower Street, 42nd Floor
   Los Angeles, CA 90071-2223
4  Telephone: (213) 430-3400
   Facsimile: (213) 430-3409
5  michael.zellers@tuckerellis.com
   mollie.benedict@tuckerellis.com
6  aggie.lee@tuckerellis.com

7  Attorneys for Defendants BRACCO
   DIAGNOSTICS INC. and
8  BRACCO RESEARCH USA INC.

9              UNITED STATES DISTRICT COURT

10           SOUTHERN DISTRICT OF CALIFORNIA

11  MONICO PAYUMO,                          )  Case No.
                                            )
12            Plaintiff,                     )  **DEFENDANTS BRACCO**
                                            )  **DIAGNOSTICS INC. AND BRACCO**
13  v.                                       )  **RESEARCH USA INC.'S NOTICE OF**
                                            )  **REMOVAL**
14                                           )
    GENERAL ELECTRIC COMPANY; GE            )
15  HEALTHCARE, INC.; GE HEALTHCARE         )  (San Diego County Superior Court, Case No.
    AS; BAYER CORPORATION; BAYER            )  37-2008-00070830-CU-PL-SC)
16  HEALTHCARE LLC; BAYER                    )
    HEALTHCARE PHARMACEUTICALS,             )
17  INC. (f/k/a BERLEX, INC., f/k/a/ BERLEX )
    LABORATORIES, INC.); BAYER AG;          )
18  BAYER SCHERING PHARMA AG (f/k/a         )
    SCHERING AG); BAYER HEALTHCARE          )
19  AG, BAYER GESELLSCHAFT FUR              )
    BETEILIGUNGEN mbH, BAYER                )
20  SCHERING, GmbH (f/k/a DRITTE BV         )
    GmbH), SCHERING BERLIN, INC.;           )
21  MALLINCKRODT, INC.; TYCO                )
    HEALTHCARE GROUP, LP; BRACCO            )
22  DIAGNOSTICS INC.; BRACCO RESEARCH       )
    USA, INC.; ALTANA PHARMA AG;            )
23  NYCOMED INTERNATIONAL                   )
    MANAGEMENT GmbH; MERRY X-RAY            )
24  CHEMICAL CORPORATION; MCKESSON          )
    CORPORATION; and DOES 1-50,             )
25                                           )
                                            )
26            Defendants.                    )
                                            )
27  _____ )

28

---

L:Aimanage/11255/00002/610003/1

1      **PLEASE TAKE NOTICE** that defendants Bracco Diagnostics Inc. ("BDI") and Bracco

2   Research USA Inc. ("BRU") hereby remove to this Court the state court action described below.

3   Removal is warranted under 28 U.S.C. § 1441(b) because this is an action over which there is

4   complete diversity between the Plaintiff and all served Defendants,[1] and thus, this Court has

5   original jurisdiction under 28 U.S.C. § 1332.

6      1.    On May 30, 2008, Plaintiff Monico Payumo filed an action in the Superior Court

7   of the State of California for the County of San Diego, titled *Monico Payumo v. General Electric*

8   *Co., et al.*, Case No. 37-2008-00070830-CU-PL-SC. A true and correct copy of the Complaint

9   in this action is attached hereto as Exhibit "A."

10      2.    No further proceedings have been had in the state court action.

11      3.    As more fully set forth below, this case is properly removed to this Court pursuant

12   to 28 U.S.C. § 1441 because BDI and BRU have satisfied the procedural requirements for

13   removal and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

14   1332.

15  **I.**    **BDI AND BRU HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR**

16       **REMOVAL.**

17      4.    Defendants BDI and BRU have not been served with this Complaint. To the best

18   of BDI and BRU's knowledge, no defendant has been served with this Complaint. Unserved

19   defendants need not join the notice of removal. *Salveson v. Western States Bankcard*

20   *Association*, 731 F.2d 1423, 1429 (9th Cir. 1984).

21      5.    Venue is proper in this Court pursuant to 28 U.S.C. § 93(c) because it is the

22   "district and division embracing the place where such action is pending." See 28 U.S.C. §

23   1441(a).

24      6.    No previous request has been made for the relief requested herein.

25

26

27

28

---

[1] To the best of BDI and BRU's knowledge, no Defendant has been served with Plaintiff's Complaint.

**DEFENDANTS BRACCO DIAGNOSTICS INC. AND BRACCO RESEARCH USA INC.'S NOTICE OF REMOVAL**

LAimanage/11255/00002/610003/1

1      **PLEASE TAKE NOTICE** that defendants Bracco Diagnostics Inc. ("BDI") and Bracco

2 Research USA Inc. ("BRU") hereby remove to this Court the state court action described below.

3 Removal is warranted under 28 U.S.C. § 1441(b) because this is an action over which there is

4 complete diversity between the Plaintiffs and all served Defendants,[1] and thus, this Court has

5 original jurisdiction under 28 U.S.C. § 1332.

6      1.     On May 30, 2008, Plaintiff Monico Payumo filed an action in the Superior Court

7 of the State of California for the County of San Diego, titled *Monico Payumo v. General Electric*

8 *Co., et al.*, Case No. 37-2008-00070830-CU-PL-SC. A true and correct copy of the Complaint

9 in this action is attached hereto as Exhibit "A."

10      2.     No further proceedings have been had in the state court action.

11      3.     As more fully set forth below, this case is properly removed to this Court pursuant

12 to 28 U.S.C. § 1441 because BDI and BRU have satisfied the procedural requirements for

13 removal and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

14 1332.

15 **I.     BDI AND BRU HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR**

16     **REMOVAL.**

17      4.     Defendants BDI and BRU have not been served with this Complaint. To the best

18 of BDI and BRU's knowledge, no defendant has been served with this Complaint. Unserved

19 defendants need not join the notice of removal. *Salveson v. Western States Bankcard*

20 *Association*, 731 F.2d 1423, 1429 (9th Cir. 1984).

21      5.     Venue is proper in this Court pursuant to 28 U.S.C. § 93(c) because it is the

22 "district and division embracing the place where such action is pending." See 28 U.S.C. §

23 1441(a).

24      6.     No previous request has been made for the relief requested herein.

25

26

27

28

---

[1] To the best of BDI and BRU's knowledge, no Defendant has been served with Plaintiff's Complaint.

LAimanage/11255/00002/610003/1

1      7.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served

2  on counsel for Plaintiff and a copy is being filed with the Clerk of the Court for the Superior

3  Court of the State of California for the County of San Diego.

4  **II.    REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER**

5        **JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.**

6      8.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because

7  this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of

8  costs and interest, and is between citizens of different states.

9      **A.    The Amount In Controversy Requirement Is Satisfied.**

10      9.    It is apparent on the face of the Complaint that Plaintiff seeks an amount in

11  controversy in excess of $75,000, exclusive of costs and interest.  Plaintiff's Complaint alleges

12  that Plaintiff sustained significant and substantial injuries arising from administration of a

13  gadolinium-based contrast agent, and as a result, he suffers from Nephrogenic Systemic Fibrosis,

14  has suffered severe and permanent injury, pain and suffering (physical and emotional), lost

15  wages and earnings, as well as incurred substantial sums of money related to his hospital and

16  related care, all of which Plaintiff alleges were proximately caused by Defendants. Exh. "A,"

17  Complaint ¶ 88.  Plaintiff additionally seeks restitution and disgorgement of profits based on

18  Defendants' alleged violation of Business & Professions Code §§ 17200 and 17500. Exh. "A,"

19  Complaint ¶¶ 156, 165.  Plaintiff also seeks damages for Defendants' alleged violation of the

20  California Consumer Legal Remedies Act. Exh. "A," Complaint ¶¶ 167-175.  Further Plaintiff

21  seeks compensatory and punitive damages.  Exh. "A," Complaint ¶¶ 176-185, Prayer nos. a and

22  b.  Therefore, analyzing the Complaint in a light most favorable to Plaintiff, while not admitting

23  liability for any amount, defense counsel represents to this Court that the amount of damages

24  alleged to be in controversy individually for Plaintiff will exceed $75,000.00, exclusive of

25  interests and costs.

26

27

28

DEFENDANTS BRACCO DIAGNOSTICS INC. AND BRACCO RESEARCH USA INC.'S NOTICE OF
REMOVAL

LAimanage/11255/00002/610003/1

**B.    There Is Complete Diversity Of Citizenship between Plaintiff and All of Served Defendants, As No Defendants Have Been Served.**

10.    The Complaint states that Plaintiff is a resident of the County of San Diego, State of California.  Exh. "A," Complaint ¶ 9.

11.    Defendant BDI is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Princeton, New Jersey.

12.    Defendant BRU is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Princeton, New Jersey.

13.    Plaintiff alleges that General Electric Company is a corporation organized under the laws of the State of New York with its principal place of business at 3135 Easton Turnpike, Fairfield, Connecticut and is a citizen of New York and Connecticut for purposes of determining diversity.  28 U.S.C. § 1332(c)(1); Exh. "A," Complaint ¶ 11.

14.    Plaintiff alleges that GE Healthcare AS is a corporation organized under the laws of Norway with its principal place of business in Kingdom of Norway and, therefore, is a citizen of Norway for purposes of determining diversity.  28 U.S.C. § 1332(c)(1); Exh. "A," Complaint, ¶ 14.

15.    Plaintiff alleges that GE Healthcare Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business at 101 Carnegie Center, Princeton, New Jersey and, therefore, is a citizen of Delaware and New Jersey for purposes of determining diversity.  28 U.S.C. § 1332(c)(1); Exh. "A," Complaint, ¶ 16.

16.    Plaintiff alleges that Bayer Corporation is a corporation organized under the laws of the State of Indiana with its principal place of business at 100 Bayer Road, Pittsburgh, Pennsylvania, and is therefore a citizen of Indiana and Pennsylvania for purposes of determining diversity.  28 U.S.C. § 1332(c)(1); Exh. "A," Complaint ¶ 23.

17.    Plaintiff alleges that Bayer Healthcare LLC is a Delaware limited liability corporation with its principal place of business in either Morristown, New Jersey, or Tarrytown, New York.  28 U.S.C. § 1332(c)(1); Exh. "A," Complaint ¶ 24.  Plaintiff further alleges that Bayer Healthcare LLC is owned in whole or part by Bayer Corporation, which is a corporation

4.

1  organized under the laws of the State of Indiana with its principal place of business at 100 Bayer

2  Road, Pittsburgh, Pennsylvania.  Bayer Healthcare LLC is therefore a citizen of Delaware,

3  Indiana, New Jersey, New York or Pennsylvania for purposes of determining diversity.  *See*

4  *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (an LLC's

5  citizenship is that of its members for diversity jurisdiction purposes); *see also Carden v. Arkoma*

6  *Assocs.*, 494 U.S. 185, 195 (1990) (for purposes of diversity jurisdiction, the citizenship of a

7  limited partnership is determined by the citizenship of each of the partners).

8       18.    Plaintiff alleges that Bayer Healthcare Pharmaceuticals Inc. is a corporation

9  organized under the laws of the State of Delaware with its principal place of business in

10  Montville, New Jersey and is therefore a citizen of Delaware and New Jersey for purposes of

11  determining diversity.  28 U.S.C. § 1332(c)(1); Exh. "A," Complaint ¶ 25.

12       19.    Plaintiff alleges that Schering Berlin, Inc. is a Delaware corporation with is

13  principal place of business at 340 Changebridge Road, Montville, New Jersey, and is therefore a

14  citizen of Delaware and New Jersey for purposes of diversity.  28 U.S.C. § 1332(c)(1); Exh. "A,"

15  Complaint ¶ 28.

16       20.    Plaintiff alleges that Bayer Schering Pharma AG, f/k/a Schering AG, is a foreign

17  company domiciled in Germany and therefore, is a citizen of Germany for purposes of

18  determining diversity.  28 U.S.C. § 1332(c)(1); Exh. "A," Complaint ¶ 29.

19       21.    Plaintiff alleges that Bayer Schering GmbH (f/k/a Dritte BV GmbH) is a foreign

20  company domiciled in Germany and therefore, is a citizen of Germany for purposes of

21  determining diversity.  28 U.S.C. § 1332(c)(1); Exh. "A," Complaint ¶ 30.

22       22.    Plaintiff alleges that Bayer AG is a foreign company domiciled in Germany and

23  therefore, is a citizen of Germany for purposes of determining diversity.  28 U.S.C. § 1332(c)(1);

24  Exh. "A," Complaint ¶ 31.

25       23.    Plaintiff alleges that Bayer Gessellschaft fur Beteiligungen mbH is a foreign

26  company domiciled in Germany and therefore, is a citizen of Germany for purposes of

27  determining diversity.  28 U.S.C. § 1332(c)(1); Exh. "A," Complaint ¶ 32.

28

1    24.    Plaintiff alleges that Bayer Healthcare AG is a foreign company domiciled in

2  Germany and therefore, is a citizen of Germany for purposes of determining diversity.  28 U.S.C.

3  § 1332(c)(1); Exh. "A," Complaint ¶ 33.

4    25.    Plaintiff alleges that Mallinckrodt, Inc. is a corporation organized under the laws

5  of the State of Delaware with its principal place of business at 675 McDonnell Blvd., St. Louis,

6  Missouri and, therefore, is a citizen of Delaware and Missouri for purposes of determining

7  diversity.  28 U.S.C. § 1332(c)(1); Exh. "A," Complaint ¶ 39.

8    26.    Plaintiff alleges that Tyco Healthcare Group, LP, is incorporated in Bermuda with

9  its United States headquarters at 15 Hampshire Street, Mansfield, Massachusetts, and is

10  therefore, a citizen of Massachusetts for purposes of determining diversity.  28 U.S.C. §

11  1332(c)(1); Exh. "A," Complaint ¶ 40.

12    27.    Plaintiff alleges that Altana Pharma AG is a German company with its principal

13  place of business in Germany and therefore, is a citizen of Germany for purposes of determining

14  diversity.  28 U.S.C. § 1332(c)(1); Exh. "A," Complaint ¶ 49.

15    28.    Plaintiff alleges that Nycomed International Management GmbH is a foreign

16  company domiciled in Switzerland and therefore, is citizen of Switzerland for purposes of

17  determining diversity.  28 U.S.C. § 1332(c)(1); Exh. "A," Complaint ¶ 49.

18    29.    The Complaint includes a number of fictitious defendants, whose citizenship are

19  ignored for removal purposes. 28 U.S.C. § 1441(a).

20    **C.    The Citizenship of McKesson Corporation and Merry X-Ray Must be**

21    **Ignored Because They Have Not Been Served With Plaintiff's Complaint.**

22    30.    This Court has original jurisdiction because no resident defendant has been served

23  with Plaintiff's Complaint.  A resident defendant who has not been served may be ignored in

24  determining removability. *Cucci v. Edwards, et al.*, 510 F. Supp. 2d 479, 482 (C.D. Cal. 2007).

25  A defendant to an action in State court may have the action removed to the district courts of the

26  United States when "none of the parties in interest properly joined and *served* as defendants is a

27  citizen of the State in which such action is brought." 28 U.S.C. § 1441(b); *Cucci*, 510 F. Supp.

28  2d at 483.  Plaintiff alleges that McKesson Corporation is a Delaware corporation organized

6.
DEFENDANTS BRACCO DIAGNOSTICS INC. AND BRACCO RESEARCH USA INC.'S NOTICE OF REMOVAL

LAimanage/11255/00002/610003/1

1    under the laws of the Delaware with its principal place of business at One Post Street, San

2    Francisco, California.  Exh. "A," Complaint, ¶ 57.  Plaintiff also alleges that Merry X-Ray

3    Chemical Corporation is a corporation organized under the laws of the California with its

4    principal place of business at 4444 Viewridge Avenue, San Diego, California.  Exh. "A,"

5    Complaint, ¶ 58.  Therefore, McKesson is a citizen of Delaware and California and Merry X-Ray

6    is a citizen of California for purposes of determining diversity.  *See United Computer Sys., Inc. v.*

7    *AT&T Corp.*, 298 F.3d 756, 763 (9th Cir. 2002).  However, because neither Merry X-Ray nor

8    McKesson have been served with Plaintiff's Complaint,[2] their citizenship must be ignored for

9    diversity purposes, and thus, this Court has original jurisdiction.  *Id.*

10          WHEREFORE, Defendants BDI and BRU respectfully remove this action from the

11   Superior Court of the State of California for the County of San Diego, bearing Case Number

12   Case No. 37-2008-00070830-CU-PL-SC to this Court pursuant to 28 U.S.C. § 1441.

13

14   DATED:  JUNE 16, 2008                    TUCKER ELLIS & WEST LLP

15

16

17                                      By: _____

18                                          Michael C. Zellers
                                            Mollie F. Benedict
19                                          Aggie B. Lee
                                            Attorneys for Defendants
20                                          BRACCO DIAGNOSTICS INC. and
                                            BRACCO RESEARCH USA INC.

21

22
     _____
23   [2]  Even if Defendants McKesson and Merry X-Ray had been served with Plaintiff's Complaint,
24   they would still not be "properly joined" parties, as they were fraudulently joined.  There are no
     allegations as to independent or individual conduct on the part of McKesson or Merry X-Ray
25   that give rise to a cause of action based on the distribution of gadolinium-based contrast agents.
     Plaintiff's Complaint only generally groups McKesson or Merry X-Ray with the Manufacturing
26   Defendant. *Lewis v. Time Inc.*, 83 F.R.D. 455, 464 (C.D. Cal. 1979), *aff'd,* 710 F.2d 549 (9th
     Cir. 1983) ("broad averments are suspect on . . . fraudulent joinder grounds").  Indeed, Plaintiff
27   even names McKesson and Merry X-Ray in the cause of action alleging a defect in the
     manufacture of the various gadolinium based contrast agents.  Complaint, ¶ 89-94.  As such,
28   McKesson and Merry X-Ray are not proper parties to this litigation.

1  | Of Counsel:
   | Thomas N. Sterchi
2  | Patrick Lysaught
   | Paul S. Penticuff
3  | Elizabeth McCulley
   | BAKER STERCHI COWDEN & RICE, L.L.C.
4  | 2400 Pershing Road, Suite 500
5  | Kansas City, MO  64108
   | Telephone:    (816) 471-2121
6  | Facsimile:     (816) 472-0288
7
   | Attorneys for Defendants
8  | BRACCO DIAGNOSTICS INC.
   | and BRACCO RESEARCH USA INC.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

8.

LAimanage/11255/00002/610003/1

# EXHIBIT "A"

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
STREET ADDRESS:        500 Third Avenue
MAILING ADDRESS:       500 Third Avenue
CITY AND ZIP CODE:     Chula Vista, CA 91910-5649
BRANCH NAME:           South County
TELEPHONE NUMBER: (619) 745-6071

PLAINTIFF(S) / PETITIONER(S):      Monica Payumo

DEFENDANT(S) / RESPONDENT(S):   GENERAL ELECTRIC COMPANY et.al.

PAYUMO VS. GENERAL ELECTRIC COMPANY

| NOTICE OF CASE ASSIGNMENT | CASE NUMBER:<br>37-2008-00070830-CU-PL-SC |
|---|---|

Judge:  William S. Cannon                                    Department: S-04

**COMPLAINT/PETITION FILED: 06/30/2008**

**CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW**

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

SDSC CIV-721 (Rev. 11-08)                    **NOTICE OF CASE ASSIGNMENT**                    Page: 1

*9*

06-12-2008  10:22AM  FROM-TIME MACHINE-LA                +2134822838        T-508  P.003/041  F-281

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE NUMBER: 37-2008-00070830-CU-PL-SC        CASE TITLE: Payumo vs. GENERAL ELECTRIC COMPANY

## NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Alternative Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.1.5, Division II and CRC Rule 201.9.

## ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial.

## ADR OPTIONS

1) **CIVIL MEDIATION PROGRAM:** The San Diego Superior Court Civil Mediation Program is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participant in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non-binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

**Assignment to Mediation, Cost and Timelines:** Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for county-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. **Discovery:** Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. **Attendance at Mediation:** Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

2) **JUDICIAL ARBITRATION:** Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

**Assignment to Arbitration, Cost and Timelines:** Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court

1

*10*

06-12-2008  10:23AM  FROM-TIME MACHINE-LA                    +2134822838        T-508  P.004/041  F-281

**3) SETTLEMENT CONFERENCES:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference judge.

**4) OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Alternative Dispute Resolution Process" which is included in this ADR package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (619) 428-3200.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.

SDSC CIV-730 (Rev 12-03)

Page: 2

2

06-12-2008  10:25AM  FROM-TIME MACHINE-LA                +2134822939           T-508  P.005/041  F-281

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS:      500 Third Avenue | |
| MAILING ADDRESS:     500 Third Avenue | |
| CITY, STATE, & ZIP CODE: Chula Vista, CA 91910-6849 | |
| BRANCH NAME:         South County | |

| PLAINTIFF(S):  Monica Payumo |
|---|

| DEFENDANT(S): GENERAL ELECTRIC COMPANY et.al. |
|---|

| SHORT TITLE:   PAYUMO VS. GENERAL ELECTRIC COMPANY |
|---|

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS (CRC 3.221) | CASE NUMBER: 37-2008-00070830-CU-PL-SC |
|---|---|

Judge: William S. Cannon                                    Department: S-04

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process. Selection of any of these options will not delay any case management time-lines.

☐ Court-Referred Mediation Program                ☐ Court-Ordered Nonbinding Arbitration

☐ Private Neutral Evaluation                      ☐ Court-Ordered Binding Arbitration (Stipulated)

☐ Private Mini-Trial                              ☐ Private Reference to General Referee

☐ Private Summary Jury Trial                      ☐ Private Reference to Judge

☐ Private Settlement Conference with Private Neutral  ☐ Private Binding Arbitration

☐ Other (specify): _____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

_____

Alternate: (mediation & arbitration only) _____

Date: _____        Date: _____

_____        _____
Name of Plaintiff                                     Name of Defendant

_____        _____
Signature                                             Signature

_____        _____
Name of Plaintiff's Attorney                          Name of Defendant's Attorney

_____        _____
Signature                                             Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3.1385. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed.

IT IS SO ORDERED.

Dated: 05/30/2008                          _____
                                           JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 01-07)      **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**          Page: 1

3

12

06-12-2008  10:25AM  FROM-TIME MACHINE-LA                    +2134822839          T-508  P.006/041  F-281

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANTS:**
*(AVISO AL DEMANDADO):*
See Attachment

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

08 MAY 30
CLERK
SAN DIEGO COURT, CA

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Monico Payumo

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia. Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

CASE NUMBER:
(Número del Caso):
**37-2008-00070830-CU-PL-SC**

Superior Court of San Diego
Southern Division
500 3rd Avenue
Chula Vista, CA 91910

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Steven J. Skikos                                        415-546-7300                    415-546-7301 Fax
Skikos, Crawford, Skikos, Joseph & Millican
625 Market Street, 11th Floor
San Francisco, CA 94105
DATE: **MAY 3 0 2008**                    Clerk, by _____ C. Riedel _____ , Deputy
*(Fecha)*                                          *(Secretario)*                              *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. January 1, 2004)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc.
www.USCourtForms.com

*13*

## ATTACHMENT TO SUMMONS

GENERAL ELECTRIC COMPANY; GE HEALTHCARE, INC.; GE
HEALTHCARE AS BAYER CORPORATION; BAYER HEALTHCARE LLC;
BAYER HEALTHCARE PHARMACEUTICALS, INC. (f/k/a BERLEX, INC., f/k/a
BERLEX LABORATORIES, INC.); BAYER AG; BAYER SCHERING PHARMA
AG (f/k/a SCHERING AG); BAYER HEALTHCARE AG; BAYER
GESELLSCHAFT FUR BETEILIGUNGEN mhH; BAYER SCHERING, GmbH
(f/k/a DRITTE BV GmbH); SCHERING BERLIN, INC.; MALLINCKRODT,
INC.; TYCO HEALTHCARE GROUP, LP; BRACCO DIAGNOSTICS INC.;
BRACCO RESEARCH USA, INC.; ALTANA PHARMA AG; NYCOMED
INTERNATIONAL MANAGEMENT GmbH; MERRY X-RAY CHEMICAL
CORPORATION; McKESSON CORPORATION; Dr. KATHERINE VICKERY;
THE PERMANENTE MEDICAL GROUP, INC.; KAISER FOUNDATION
HEALTH PLAN, INC. (d/b/a KAISER PERMANENTE); KAISER PERMANENTE
VALLEJO MEDICAL CENTER; KAISER FOUNDATION HOSPITALS; and
DOES 1 – 50,

*14*

06-12-2008   10:27AM   FROM-TIME MACHINE-LA                    +2134822838         T-508   P.008/041   F-281

SOUTH COURT                                                    CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Steven J. Skikos 148110<br>Skikos, Crawford, Skikos, Joseph & Millican<br>625 Market Street, 11th Floor<br>San Francisco, CA 94105<br>TELEPHONE NO. 415-546-7300   FAX NO. 415-546-7301 | 08 MAY 30 PH 3:16<br>CLERK<br>SAN DIEGO COUNTY, CA |

ATTORNEY FOR (Name): Monico Payumo, Plaintiff

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 500 3rd Avenue
MAILING ADDRESS:
CITY AND ZIP CODE: Chula Vista, CA 91910
BRANCH NAME: Southern Division

CASE NAME: MONICO PAYUMO v. GENERAL ELECTRIC COMPANY, ET AL.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER |
|---|---|---|---|---|
| ☒ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE<br>DEPT: | 37-2008-00070830-CU-PL-SC |

BY FAX

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22)<br>☐ Uninsured motorist (46) | ☐ Breach of contract/warranty (06)<br>☐ Rule 3.740 collections (09)<br>☐ Other collections (09)<br>☐ Insurance coverage (18)<br>☐ Other contract (37) | ☐ Antitrust/Trade regulation (03)<br>☐ Construction defect (10)<br>☐ Mass tort (40)<br>☐ Securities litigation (28)<br>☐ Environmental/Toxic tort (30) |
| Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort<br>☐ Asbestos (04)<br>☒ Product liability (24)<br>☐ Medical malpractice (45)<br>☐ Other PI/PD/WD (23) | Real Property<br>☐ Eminent domain/Inverse condemnation (14)<br>☐ Wrongful eviction (33)<br>☐ Other real property (26) | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)<br>Enforcement of Judgment |
| Non-PI/PD/WD (Other) Tort<br>☐ Business tort/unfair business practice (07)<br>☐ Civil rights (08)<br>☐ Defamation (13)<br>☐ Fraud (16)<br>☐ Intellectual property (19)<br>☐ Professional negligence (25)<br>☐ Other non-PI/PD/WD tort (35) | Unlawful Detainer<br>☐ Commercial (31)<br>☐ Residential (32)<br>☐ Drugs (38)<br>Judicial Review<br>☐ Asset forfeiture (05)<br>☐ Petition re: arbitration award (11)<br>☐ Writ of mandate (02) | ☐ Enforcement of judgment (20)<br>Miscellaneous Civil Complaint<br>☐ RICO (27)<br>☐ Other complaint (not specified above) (42)<br>Miscellaneous Civil Petition<br>☐ Partnership and corporate governance (21)<br>☐ Other petition (not specified above) (43) |
| Employment<br>☐ Wrongful termination (36)<br>☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☒ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☒ Large number of separately represented parties   d. ☒ Large number of witnesses
   b. ☒ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. ☒ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☒ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☒ monetary   b. ☒ nonmonetary; declaratory or injunctive relief   c. ☒ punitive
4. Number of causes of action (specify): 11
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 5/30/08

Kathleen N. Millican Esq.
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

15

06-12-2008  10:27AM  FROM-TIME MACHINE-LA          +2134822939       T-508  P.009/041  F-281

1 | Steven J. Skikos, Bar No. 148110
Kathleen N. Millican, Bar No. 203691
2 | SKIKOS, CRAWFORD, SKIKOS, JOSEPH & MILLICAN
625 Market Street, 11th Floor
3 | San Francisco, California 94105
(415) 546-7300
4 | (415) 546-7301 fax
sskikos@skikoscrawford.com
5 | kmillican@skikoscrawford.com
6 | Attorneys for Plaintiff MONICO PAYUMO

08 MAY 30  PM 3: 17

SAN DIEGO COUNTY, CA

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF SAN DIEGO

10                        UNLIMITED CIVIL CASE

BY FAX

| | |
|---|---|
| 11  MONICO PAYUMO, | Case No.: 37-2008-00070830-CU-PL-SC |
| 12         Plaintiff, | COMPLAINT FOR DAMAGES |
| 13     vs. | 1.  STRICT PRODUCTS LIABILITY - |
| 14  GENERAL ELECTRIC COMPANY; |     MANUFACTURING DEFECT |
|     GE HEALTHCARE, INC.; | 2.  STRICT PRODUCTS LIABILITY – |
| 15  GE HEALTHCARE AS; |     FAILURE TO WARN |
|     BAYER CORPORATION; | 3.  STRICT LIABILITY IN TORT |
| 16  BAYER HEALTHCARE LLC; | 4.  NEGLIGENCE |
|     BAYER HEALTHCARE | 5.  BREACH OF EXPRESS WARRANTY |
| 17       PHARMACEUTICALS, INC. (f/k/a | 6.  BREACH OF IMPLIED WARRANTY |
|          BERLEX, INC.; f/k/a BERLEX | 7.  DECEIT BY CONCEALMENT |
| 18       LABORATORIES, INC.); |     (VIOLATION OF CIVIL CODE §§ 1709- |
| 19  BAYER AG; |     1710) |
|     BAYER SCHERING PHARMA AG (f/k/a | 8.  NEGLIGENT MISREPRESENTATION |
| 20       SCHERING AG); |     AND CONCEALMENT |
|     BAYER HEALTHCARE AG; | 9.  VIOLATION OF BUSINESS AND |
| 21  BAYER GESELLSCHAFT FUR |     PROFESSIONS CODE §17200 |
|          BETEILIGUNGEN mbH; | 10. VIOLATION OF BUSINESS AND |
| 22  BAYER SCHERING, GmbH (f/k/a |     PROFESSIONS CODE §17500 |
|          DRITTE BV GmbH); | 11. VIOLATION OF CIVIL CODE §1750 |
| 23  SCHERING BERLIN, INC.; | |
|     MALLINCKRODT, INC.; | DEMAND FOR A JURY TRIAL |
| 24  TYCO HEALTHCARE GROUP, LP; | |
|     BRACCO DIAGNOSTICS INC.; | |
| 25  BRACCO RESEARCH USA, INC.; | |
|     ALTANA PHARMA AG; | |
| 26  NYCOMED INTERNATIONAL | |
| 27       MANAGEMENT GmbH; | |
|     MERRY X-RAY CHEMICAL | |
| 28 | |

-1-

16

1   CORPORATION;                        )
2   McKESSON CORPORATION; and           )
    DOES 1 – 50,                        )
3                                       )
            Defendants.                 )
4   _____

5

6

          COMES NOW Plaintiff MONICO PAYUMO, by and through undersigned counsel, and alleges
7   as follows:

8       1.      This is a civil action brought on behalf of Plaintiff for personal injuries and economic

9   damages sustained as a direct and proximate result of the negligent and wrongful conduct of General

10  Electric Company, GE Healthcare, Inc., and GE Healthcare AS (hereinafter collectively referred to as

11  "GE Defendants"), McKesson Corporation ("McKesson") and Merry X-Ray Chemical Corporation

12  ("Merry X-Ray") in connection with the design, development, manufacture, testing, packaging,

13  promoting, marketing, distribution, labeling, and/or sale of the gadolinium based contrast dye,

14  Omniscan.

15      2.      At all times material hereto, Omniscan was designed, developed, manufactured, tested,

16  packaged, promoted, marketed, distributed, labeled, and/or sold by the GE Defendants, McKesson and

17  Merry X-Ray.

18      3.      This is a civil action brought on behalf of Plaintiff for personal injuries and economic

19  damages sustained as a direct and proximate result of the negligent and wrongful conduct of Bayer

20  Corporation, Bayer Healthcare LLC, Bayer Healthcare Pharmaceuticals, Inc. (f/k/a Berlex, Inc., f/k/a

21  Berlex Laboratories, Inc.), Bayer AG, Bayer Schering Pharma AG (f/k/a Schering AG), Bayer

22  Healthcare AG, Bayer Gessellschaft fur Beteiligungen mbH, Bayer Schering GmbH (f/k/a Dritte BV

23  GmbH), and Schering Berlin, Inc. (hereinafter collectively referred to as "Bayer Defendants"),

24  McKesson Corporation and Merry X-Ray Chemical Corporation in connection with the design,

25  development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, and/or sale

26  of the gadolinium based contrast dye, Magnevist.

27

28

                                    -2-
                          COMPLAINT FOR DAMAGES

*17*

1    4.    At all times material hereto, Magnevist was designed, developed, manufactured, tested,

2    packaged, promoted, marketed, distributed, labeled, and/or sold by the Bayer Defendants, McKesson

3    and Merry X-Ray.

4    5.    This is a civil action brought on behalf of Plaintiff for personal injuries and economic

5    damages sustained as a direct and proximate result of the negligent and wrongful conduct of

6    Mallinckrodt, Inc. and Tyco Healthcare Group, LP (hereinafter referred to as "Mallinckrodt

7    Defendants"), McKesson Corporation and Merry X-Ray Chemical Corporation in connection with the

8    design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling,

9    and/or sale of the gadolinium based contrast dye, Optimark.

10    6.    At all times material hereto, Optimark was designed, developed, manufactured, tested,

11    packaged, promoted, marketed, distributed, labeled, and/or sold by the Mallinckrodt Defendants,

12    McKesson and Merry X-Ray.

13    7.    This is a civil action brought on behalf of Plaintiff for personal injuries and economic

14    damages sustained as a direct and proximate result of the negligent and wrongful conduct of Bracco

15    Diagnostics Inc., Bracco Research USA, Inc., Altana Pharma AG, and Nycomed International

16    Management GmbH (hereinafter referred to as "Bracco Defendants"), McKesson Corporation and

17    Merry X-Ray Chemical Corporation in connection with the design, development, manufacture, testing,

18    packaging, promoting, marketing, distribution, labeling, and/or sale of the gadolinium based contrast

19    dyes MultiHance and ProHance.

20    8.    At all times material hereto, MultiHance and ProHance were designed, developed,

21    manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by the Bracco

22    Defendants, McKesson and Merry X-Ray.

23    **PARTIES AND JURISDICTION**

24    9.    Plaintiff MONICO PAYUMO is, and at all times relevant to this action was, a resident of

25    the County of San Diego, State of California.

26    10.    Plaintiff alleges an amount in controversy in excess of the minimal jurisdictional limits of

27    this Court.

28

-3-

COMPLAINT FOR DAMAGES

*18*

1      11.    Defendant General Electric Company is a New York Corporation with its principal place of

2  business at 3135 Easton Turnpike, Fairfield, Connecticut 06431. Defendant General Electric Company

3  is a resident of both New York and Connecticut. Defendant General Electric Company is the parent

4  company of Defendant GE Healthcare AS and GE Healthcare, Inc.

5      12.    Omniscan, one of the products in question in this suit, is identified by General Electric

6  Company in its packaging that it is a product of "GE Healthcare," which is a unit/division of General

7  Electric Company. "GE Healthcare" is prominently identified on the Omniscan packaging/prescribing

8  information, alongside the "GE" monogram. Omniscan is identified as a trademark of GE Healthcare.

9  "GE" and the GE monogram are trademarks of the General Electric Company. The GE Healthcare

10  website, which includes detailed product information concerning Omniscan, is copyrighted by General

11  Electric Company. General Electric Company does business as GE Healthcare, including the business

12  of designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into United

13  States interstate commerce the drug Omniscan.

14      13.   At all times relevant, Defendant General Electric Company, and/or its corporate

15  predecessors, were engaged in the business of designing, developing, manufacturing, testing,

16  packaging, promoting, marketing, distributing, labeling, and/or selling directly and indirectly through

17  third parties or related entities, the drug Omniscan.

18      14.    Defendant GE Healthcare AS is a Norwegian corporation with its principal place of business

19  in the Kingdom of Norway. Defendant GE Healthcare AS is a subsidiary of General Electric Company.

20  Omniscan's package insert/prescribing information identifies the putative manufacturer of Omniscan as

21  GE Healthcare AS.

22      15.    At all times relevant, Defendant GE Healthcare AS, and/or its corporate predecessors, were

23  engaged in the business of designing, developing, manufacturing, testing, packaging, promoting,

24  marketing, distributing, labeling, and/or selling directly and indirectly through third parties or related

25  entities, the drug Omniscan.

26      16.    Defendant GE Healthcare, Inc. is a Delaware corporation with its principal place of business

27  at 101 Carnegie Center, Princeton, New Jersey. Defendant GE Healthcare, Inc. is a resident and citizen

28  of both Delaware and New Jersey. Defendant GE Healthcare, Inc. is a subsidiary of General Electric

-4-

*19*

1   Company. Omniscan's package insert identifies the putative distributor of Omniscan as GE Healthcare,

2   Inc.

3       17.    At all times relevant, Defendant GE Healthcare, Inc., and/or its corporate predecessors, were

4   engaged in the business of designing, developing, manufacturing, testing, packaging, promoting,

5   marketing, distributing, labeling, and/or selling directly and indirectly through third parties or related

6   entities, the drug Omniscan.

7       18.    Upon information and belief and at the relevant times, Omniscan was distributed and sold in

8   the United States by GE Healthcare, Inc. and was manufactured by GE Healthcare AS.

9       19.    Defendants General Electric Company, GE Healthcare, GE Healthcare, Inc., and GE

10  Healthcare AS will be collectively referred to in this Complaint as the "GE Defendants."

11      20.    Upon information and belief, at all relevant times, the GE Defendants were present and

12  doing business in the State of California.

13      21.    At all relevant times, the GE Defendants transacted, solicited, and conducted business in the

14  State of California and derived substantial revenue from such business.

15      22.    At all relevant times, the GE Defendants expected or should have expected that its acts

16  would have consequences within the United States of America, the State of California.

17      23.    Defendant Bayer Corporation is an Indiana Corporation with its principal place of business

18  at 100 Bayer Road, Pittsburgh, Pennsylvania 15205. Defendant Bayer Corporation is a resident and

19  citizen of both Indiana and Pennsylvania. Defendant Bayer Corporation is owned in whole or in part by

20  Bayer AG.

21      24.    Defendant Bayer Healthcare LLC is a Delaware limited liability company with its principal

22  place of business, upon information and belief, in Morristown, New Jersey or Tarrytown, New York.

23  Defendant Bayer Healthcare LLC is a resident and citizen of Delaware and New Jersey or New York.

24  Defendant Bayer Healthcare LLC is owned in whole or in part by Defendant Bayer Corporation.

25      25.    Defendant Bayer Healthcare Pharmaceuticals, Inc. (f/k/a Berlex, Inc., f/k/a Berlex

26  Laboratories, Inc.) is a Delaware corporation with its principal place of business in Montville, New

27  Jersey. Defendant Bayer Healthcare Pharmaceuticals, Inc. is a resident and citizen of both Delaware

28

-5-

COMPLAINT FOR DAMAGES

20

1  and New Jersey.  Defendant Bayer Healthcare Pharmaceuticals, Inc. is owned in whole or in part by

2  Schering Berlin, Inc.

3      26.     Defendant Bayer Healthcare Pharmaceuticals, Inc. is a corporate successor to Berlex

4  Laboratories, Inc. (Berlex) and as such is obligated for its predecessor's liabilities.  Berlex was engaged

5  in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing,

6  distributing, labeling, and/or selling directly and indirectly through third parties or related entities, the

7  drug Magnevist.

8      27.     Bayer Healthcare Pharmaceuticals, Inc., formerly known as Berlex, Inc., formerly known as

9  Berlex Laboratories, Inc., was engaged in the business of distributing, selling and marketing the

10  prescription pharmaceutical Magnevist in the United States at all relevant times.

11      28.     Defendant Schering Berlin, Inc. is a Delaware corporation with its principle place of

12  business is 340 Changebridge Road, Montville, New Jersey 07045-1000.  Schering Berlin, Inc. is

13  owned in whole or in part by Bayer HealthCare, LLC.

14      29.     Defendant Bayer Schering Pharma, AG (f/k/a Schering AG) is a foreign company domiciled

15  in Germany and is owned, in whole or in part, by Bayer Schering GmbH.

16      30.     Defendant Bayer Schering GmbH (f/k/a Dritte BV GmbH) is a foreign company domiciled

17  in Germany and is owned in whole or in part by Bayer AG.

18      31.     Defendant Bayer AG is a company domiciled in Germany and is the parent/holding

19  company of all other Bayer Defendants.

20      32.     Defendant Bayer Gessellschaft fur Beteiligungen mbH is a foreign company domiciled in

21  Germany, and is owned in whole or in part by Bayer AG.

22      33.     Defendant Bayer HealthCare AG is a foreign company domiciled in Germany, and is owned

23  in whole or in part by Bayer AG.

24      34.     Defendants Bayer Corporation, Bayer Healthcare LLC, Bayer Healthcare Pharmaceuticals,

25  Inc. (f/k/a Berlex, Inc., f/k/a Berlex Laboratories, Inc.), Bayer Schering Pharma AG (f/k/a Schering

26  AG), Schering Berlin, Inc., Bayer Gesellschaft Fur Beteiligungen mbH, Bayer AG and Bayer

27  HealthCare AG will be collectively referred to in this Complaint as the "Bayer Defendants."

28

-6-

21

35.  At all relevant times, the Bayer Defendants were each engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling directly and indirectly through third parties or related entities, either directly or indirectly through third parties or related entities, the diagnostic agent Magnevist, and/or the Defendants are otherwise responsible as corporate successors for the liabilities of the entities that designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled and/or sold the diagnostic agent Magnevist.

36.  Upon information and belief, at all relevant times, the Bayer Defendants were present and doing business in the State of California.

37.  At all relevant times, the Bayer Defendants transacted, solicited, and conducted business in the State of California and derived substantial revenue from such business.

38.  At all relevant times, the Bayer Defendants expected or should have expected that its acts would have consequences within the United States of America, the State of California.

39.  Defendant Mallinckrodt, Inc. ("Defendant Mallinckrodt") is a Delaware corporation with its principal place of business at 675 McDonnell Blvd., St. Louis, Missouri.  Defendant Mallinckrodt is a resident and citizen of both Delaware and Missouri.  Defendant Mallinckrodt is a subsidiary of Tyco Healthcare Group LP.

40.  Defendant, Tyco Healthcare Group, LP, is incorporated in Bermuda and has its United States headquarters at 15 Hampshire Street, Mansfield, Massachusetts, 02048.

41.  At all times relevant, the Mallinckrodt Defendants engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling directly and indirectly through third parties or related entities, the drug Optimark.

42.  Upon information and belief, at all relevant times, the Mallinckrodt Defendants were present and doing business in the State of California.

43.  At all relevant times, the Mallinckrodt Defendants transacted, solicited, and conducted business in the State of California and derived substantial revenue from such business.

44.  At all relevant times, the Mallinckrodt Defendants expected or should have expected that its acts would have consequences within the United States of America, the State of California.

-7-
COMPLAINT FOR DAMAGES

22

45.     Defendant Bracco Diagnostics Inc. is a Delaware corporation with its principal place of business in Princeton, New Jersey.

46.     Upon information and belief, at all times relevant, Defendant Bracco Diagnostics Inc. was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling directly and indirectly through third parties or related entities, the drugs MultiHance and ProHance.

47.     Upon information and belief, Defendant Bracco Research USA, Inc. is a Delaware corporation, with its principal place of business in Princeton, New Jersey.

48.     Upon information and belief, at all times relevant, Defendant Bracco Research USA, Inc. was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling directly and indirectly through third parties or related entities, the drugs MultiHance and ProHance.

49.     Upon information and belief, Defendant ALTANA Pharma AG is a German company with its principal place of business in Germany. Defendant ALTANA Pharma AG manufactured MultiHance and/or ProHance for Bracco Diagnostics Inc.

50.     Upon information and belief, at all times relevant, Defendant ALTANA Pharma AG was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling directly and indirectly through third parties or related entities, the drugs MultiHance and ProHance.

51.     Defendant Nycomed International Management GmbH ("Nycomed") is a Swiss company domiciled in Switzerland. Defendant Nycomed bought ALTANA Pharma AG in 2006. Defendant Nycomed is the corporate successor to ALTANA Pharma AG and, as such, is obligated for its predecessor's liabilities.

52.     Defendants Bracco Diagnostics Inc., Bracco Research USA, Inc., ALTANA Pharma AG and Nycomed will be collectively referred to in this Complaint as the "Bracco Defendants."

53.     At all times relevant, the Bracco Defendants were engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or

-8-

COMPLAINT FOR DAMAGES

23

1  selling directly and indirectly through third parties or related entities, the drugs MultiHance and

2  ProHance.

3    54.    Upon information and belief, at all relevant times, the Bracco Defendants were present and

4  doing business in the State of California.

5    55.    At all relevant times, the Bracco Defendants transacted, solicited, and conducted business in

6  the State of California and derived substantial revenue from such business.

7    56.    At all relevant times, the Bracco Defendants expected or should have expected that its acts

8  would have consequences within the United States of America, the State of California.

9    57.    Defendant McKesson Corporation ("McKesson") is a Delaware medical supply management

10  corporation with its principal place of business located at One Post Street, San Francisco, California.

11  McKesson supplies Defendants gadolinium based contrast agents to health care providers in California.

12  On information and belief, this Defendant had supply agreements with the health care providers for

13  Plaintiff to distribute the gadolinium based contrast agents in question to the health care providers of

14  Plaintiff and effectively chose the brand of contrast dye that the healthcare provider would give to

15  Plaintiff.

16    58.    Defendant Merry X-Ray Chemical Corporation ("Merry X-Ray") is a California medical

17  supply management corporation with its principal place of business located at 4444 Viewridge Avenue,

18  San Diego, California.  Merry X-Ray distributes gadolinium based contrast agents to health care

19  providers in California.  On information and belief, this Defendant had supply agreements with the

20  health care providers for Plaintiff to distribute the gadolinium based contrast agents in question to the

21  health care providers of Plaintiff and effectively chose the brand of contrast dye that the healthcare

22  provider would give to Plaintiff.

23    59.    The true names or capacities, whether individual, corporate, or otherwise, of Defendants

24  DOES 1 through 50, inclusive, are unknown to Plaintiff who therefore sues said Defendants by such

25  fictitious names. Plaintiff believes and alleges that each of the Defendants designated herein by

26  fictitious names is in some manner legally responsible for the events and happenings herein referred to

27  and caused damages proximately and foreseeably to Plaintiff as alleged herein.

28

-9-

COMPLAINT FOR DAMAGES

24

60.    At all times herein alleged, "Defendants" include all herein named Defendants as well as Defendants DOES 1 through 50, inclusive.

61.    At all times herein alleged, each of the Defendants was the agent, servant, partner, aider and abettor, co-conspirator and joint venturer of each of the remaining Defendants herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their conduct constituted a breach of duty owed to Plaintiff.

62.    There exists, and at all times herein alleged, there existed, a unity of interest in ownership between certain Defendants and other certain Defendants such that any individuality and separateness between the certain Defendants has ceased and these Defendants are the alter-ego of the other certain Defendants and exerted control over those Defendants. Adherence to the fiction of the separate existence of these certain Defendants as an entity distinct from other certain Defendants will permit an abuse of the corporate privilege and would sanction fraud and would promote injustice.

63.    DOES 1 through 50, and each of them, acted independently of, or jointly with, other Defendants, and are in some manner legally responsible for the events and happenings herein referred to, and caused damages proximately and foreseeably to Plaintiffs as alleged herein.

## GENERAL ALLEGATIONS

64.    Omniscan is an injectable paramagnetic contrast agent for magnetic resonance imaging and arteriography. It contains the metal gadolinium, which is highly toxic in its free state. Omniscan, the chemical name of which is gadolinium diethylenetriamine pentaacetic acid bismethylamide (gadodiamide), is represented by the GE Defendants to be safely and effectively indicated for intravenous administration to facilitate the visualization of lesions with abnormal vascularity.

65.    Omniscan is cleared from the body solely by glomerular filtration in the kidneys. As a result, it has a prolonged half-life in patients with renal insufficiency and who, therefore, are at increased risk for adverse health effects in connection with Omniscan administration.

66.    Omniscan was originally developed by Salutar, Inc., which then conducted pre-clinical testing with Sterling Winthrop and Daiichi Pharmaceuticals. Salutar was subsequently acquired by Nycomed. In 1994, Nycomed acquired Sterling Winthrop's diagnostic imaging business.

-10-

25

[object Object]segment2

67.     In 1997, Nycomed acquired Amersham International plc, and the new company was named Amersham plc, which then held the rights to Omniscan.

68.     In 2004, General Electric Company acquired Amersham plc and the rights to Omniscan. At the time of the acquisition, Amersham plc was the ultimate parent company of Amersham Health AS, which manufactured the Omniscan that was distributed and sold in the United States, and Amersham Health Inc., which distributed and sold Omniscan in the United States. In 2006, Amersham Health AS was renamed GE Healthcare AS, and Amersham Health, Inc. was renamed GE Healthcare Inc.

69.     Defendants General Electric Company, GE Healthcare AS, and GE Healthcare, Inc. are corporate successors to Amersham plc and its related entities and, as such, are obligated for their predecessor's liabilities. Amersham plc, either itself or by and through its subsidiaries, was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling directly and indirectly through third parties or related entities, the drug Omniscan.

70.     Magnevist is an injectable paramagnetic contrast agent used for magnetic resonance imaging and arteriography. It contains the metal gadolinium, which is highly toxic in its free state. Magnevist, the chemical name of which is gadopentetate dimeglumine, was represented by the Bayer Defendants to be safely and effectively indicated for intravenous administration to facilitate the visualization of cranial and spinal anatomy as well as tumors, lesions, and immediately adjacent areas. Magnevist was further represented by the Bayer Defendants to be superior to two of their competitors (Omniscan and Optimark) in its thermodynamic and conditional stability, its low volume of excess chelate and its ability to prevent the release of gadolinium.

71.     Optimark is an injectable paramagnetic contrast agent used for magnetic resonance imaging and arteriography. It contains the metal gadolinium, which is highly toxic in its free state. Optimark, the chemical name of which is gadolinium diethylenetriamine pentaacetic acid bismethoxyethylamide (gadoversetamide), is represented by the Mallinckrodt Defendants to be safely and effectively indicated for intravenous administration to facilitate the visualization of lesions with abnormal vascularity.

72.     Upon information and belief, MultiHance and ProHance are injectable paramagnetic contrast agents for magnetic resonance imaging and arteriography. They contain the metal gadolinium, which is

-11-

26

1  highly toxic in its free state. Upon information and belief, MultiHance and ProHance were represented
2  by the Bracco Defendants to be safely and effectively indicated for intravenous administration to
3  facilitate visualization of lesions with abnormal blood brain barrier or abnormal vascularity of the brain,
4  spine, and associated tissues.

5      73.    At all times relevant hereto, the Defendants knew, or should have known, about the
6  significant health risk of their products' administration to patients with renal insufficiency, including,
7  but not limited to, the risk of nephrogenic fibrosis in the skin and other body organs. At all times
8  relevant hereto, Defendants knew, or should have known, that in its free state, gadolinium is highly
9  toxic, harmful and dangerous to humans, and causes severe physical injury and knew, or should have
10  known, of the need to prevent the gadolinium contained in its product from becoming free in the body
11  of humans injected with Omniscan, Magnevist, Optimark, MultiHance and/or ProHance, through the
12  use of, among other things, proper design, testing, and manufacturing.

13      74.    At all relevant times, Defendants knew, or should have known, that there were safer,
14  alternative designs for paramagnetic contrast agents that would prevent or minimize the risk of
15  gadolinium becoming free in the bodies of humans and knew, or should have known, of safer,
16  alternative designs for imaging systems, like those used by other leading MRI systems manufacturers,
17  that do not use gadolinium based contrast agents, which would provide a safer imaging alternative for
18  the public, including Plaintiff.

19      75.    At all times relevant hereto, Defendants knew, or should have known, that their respective
20  products, Omniscan, Magnevist, Optimark, MultiHance and/or ProHance, were not reasonably fit,
21  suitable or safe for their intended purpose and, specifically, that they were defective and unsafe for use
22  in patients with renal insufficiency, such as Plaintiff, and knew, or should have known, that the
23  gadolinium contained in its product is highly toxic to humans, and knew, or should have known, about
24  the significant health risk of administration of these products to patients with renal insufficiency,
25  including, but not limited to, the risk of toxic gadolinium being released into the bodies of those
26  patients, causing severe physical injury.

27      76.    Plaintiff is informed and believes and thereon alleges that he was injected with a
28  gadolinium-based contrast agent during an MRI in or about May 2004.

-12-

COMPLAINT FOR DAMAGES

*2 7*

77.    Upon information and belief, Plaintiff may have been exposed to Omniscan, Magnevist, Optimark, MultiHance and/or ProHance during imaging procedures performed at various healthcare facilities on various additional dates unknown to Plaintiff at this time.  Plaintiff has performed, and will continue to perform, due diligence to ascertain the identity of any and all additional gadolinium-based contrast agents to which Plaintiff was exposed, if any.

78.    After being administered gadolinium-based contrast dye, and, upon information and belief, Omniscan, Magnevist, Optimark, MultiHance and/or ProHance, gadolinium was released into Plaintiff's body.  Plaintiff began experiencing symptoms of Nephrogenic Systemic Fibrosis (NSF), also known as Nephrogenic Fibrosing Dermopathy (hereinafter "NFD"), after and because of these administrations.

79.    Plaintiff was diagnosed with NSF/NFD.

80.    Plaintiff files this lawsuit within the applicable limitations period of first suspecting that said gadolinium-based contrast agents were the cause of any appreciable harm sustained by plaintiff. Plaintiff could not, by the exercise of reasonable diligence, have discovered the wrongful cause of the plaintiff's injuries at an earlier time because the injuries were caused without perceptible trauma or harm, and when the Plaintiff's injuries were discovered their cause was unknown to plaintiff. Plaintiff did not suspect, nor did plaintiff have reason to suspect, that Plaintiff had been injured, the cause of the injuries, or the tortious nature of the conduct causing the injuries, until less than the applicable limitations period prior to the filing of this action. Additionally, plaintiff was prevented from discovering this information sooner because defendants herein misrepresented and continue to misrepresent to the public and to the medical profession that the gadolinium-based contrast agents are safe and free from serious side effects, and defendants have fraudulently concealed facts and information that could have led plaintiff to discover a potential cause of action.

81.    NSF/NFD develops only in patients with renal insufficiency, such as Plaintiff, who have been given an injection of a gadolinium-based contrast agent such as Omniscan, Magnevist, Optimark, MultiHance and/or ProHance.

82.    NSF/NFD is predominantly characterized by discoloration, thickening, tightening, and swelling of the skin within weeks after receiving a gadolinium-based contrast injection such as

-13-

COMPLAINT FOR DAMAGES

28

1   Magnevist, Omniscan, Optimark, MultiHance and/or ProHance. These symptoms can occur weeks or
2   months after a person is administered these dyes. These fibrotic and edematous changes produce
3   muscular weakness and inhibit flexion and extension of joints, resulting in contractures. NSF/NFD
4   often progresses to painful inhibition of the ability to use the arms, legs, hands, feet, and other joints.
5   The skin changes that begin as darkened patches or plaques progress to a "woody" texture and are
6   accompanied by burning, itching, or severe pain in the areas of involvement. NSF/NFD also progresses
7   to a fibrotic or scarring condition of other body organs such as the lungs, heart, liver, and musculature,
8   and that can inhibit their ability to function properly and may lead to death. NSF/NFD is a progressive
9   disease as to which there is no known cure.

10      83.    The Defendants consistently failed to warn consumers and/or their health care providers that
11   severe, even fatal, injuries could result when their dyes are administered to patients with renal
12   insufficiency.

13      84.    During the years that the Defendants manufactured, marketed, and sold their respective
14   products, there were numerous case reports, studies, assessments, papers, and other relevant
15   experimental and clinical data that have described and/or demonstrated dissociation and
16   transmetallation in connection with the use of certain gadolinium-based contrast agents. Despite this,
17   the Defendants repeatedly failed to adequately revise their package inserts, Material Safety Data Sheets,
18   and other product-related literature, and to conduct appropriate post-marketing communications in order
19   to convey adequate warnings.

20      85.    The Defendants repeatedly and consistently failed to advise consumers and/or their health
21   care providers of the propensity of their products to undergo dissociation and transmetallation in vivo
22   and of the causal relationship between certain gadolinium contrast dye and the development of
23   NSF/NFD in patients with renal insufficiency.

24      86.    Plaintiff suffers from debilitating and worsening fibrotic changes to Plaintiff's body as a
25   result of contracting NSF/NFD.

26      87.    Had the Defendants properly disclosed the risks associated with their respective products to
27   Plaintiff and/or Plaintiff's health care providers, Plaintiff would not have been administered
28   gadolinium.

-14-

COMPLAINT FOR DAMAGES

29

88.    As alleged herein, as a direct and proximate result of the Defendants' negligence and wrongful conduct, and the unreasonably dangerous and defective characteristics of the subject product, Plaintiff suffered severe and permanent physical injuries, including but not limited to the development of NSF/NFD. Plaintiff endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiff incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise physically, emotionally, and economically injured. Plaintiff suffered severe pecuniary loss. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein. The injuries and damages alleged herein are permanent and will continue into the future.

## COUNT I

### STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT

**(Against the GE, Bayer, Mallinckrodt and Bracco Defendants,**

**McKesson, Merry X-Ray and Does 1 – 25)**

89.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

90.    At all times material to this action, the Defendants were responsible for designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling directly and indirectly through third parties or related entities, their respective gadolinium based contrast dyes.

91.    The gadolinium based contrast dyes Omniscan, Magnevist, Optimark, MultiHance and/or ProHance are defective and unreasonably dangerous to consumers.

92.    At all times material to this action, Omniscan, Magnevist, Optimark, MultiHance and/or ProHance were expected to reach, and did reach, consumers in the State of CALIFORNIA and throughout the United States, including the Plaintiff herein, without substantial change in the condition in which they were sold.

93.    At all times material to this action, Omniscan, Magnevist, Optimark, MultiHance and/or ProHance were designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled and/or sold by the respective Defendants in a defective and unreasonably dangerous condition at

-15-

COMPLAINT FOR DAMAGES

90

the time they were placed in the stream of commerce in ways which include, but are not limited to, one
or more of the following particulars:

    a.  When placed in the stream of commerce, Omniscan, Magnevist, Optimark, MultiHance
and/or ProHance contained manufacturing defects that rendered the products
unreasonably dangerous;

    b.  Omniscan, Magnevist, Optimark, MultiHance and/or ProHance contained their
manufacturing defects at the time that they were in the possession and control of the
Defendants;

    c.  Omniscan, Magnevist, Optimark, MultiHance and/or ProHance were not made in
accordance with the Defendants' specifications or performance standards; and

    d.  Omniscan, Magnevist, Optimark, MultiHance and/or ProHance contained their
manufacturing defects before they left the control of the Defendants.

94.  As a direct and proximate result of the defective manufacturing and the unreasonably
dangerous and defective characteristics of Omniscan, Magnevist, Optimark, MultiHance and/or
ProHance, and the Defendants' failure to comply with federal standards and requirements, the Plaintiff
suffered severe and permanent injuries, including but not limited to the development of NSF. Plaintiff
endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiff
incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was
otherwise physically, emotionally, and economically injured. Plaintiff suffered severe pecuniary loss.
Plaintiff seeks actual and punitive damages from the Defendants as alleged herein. The injuries and
damages alleged herein are permanent and will continue into the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and
punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the
Court deems proper.

COUNT II

STRICT PRODUCTS LIABILITY – FAILURE TO WARN

(Against the GE, Bayer, Mallinckrodt and Bracco Defendants,

McKesson, Merry X-Ray and Docs 1 – 25)

-16-

COMPLAINT FOR DAMAGES

31

95. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

96. Omniscan, Magnevist, Optimark, MultiHance and/or ProHance were defective and unreasonably dangerous when they left the possession of the respective Defendants in that they contained warnings insufficient to alert consumers, including Plaintiff herein, of the dangerous risks and reactions associated with Omniscan, Magnevist, Optimark, MultiHance and/or ProHance including but not limited to their propensity to cause the development of NSF and other serious side effects including death when administered to patients with renal insufficiency, notwithstanding the Defendants' knowledge of an increased risk of these injuries and side effects over other forms of MRI and MRA imaging procedures.

97. Plaintiff was prescribed, or otherwise exposed to, and used gadolinium-based contrast dye and, upon information and belief, Omniscan, Magnevist, Optimark, MultiHance and/or ProHance for their intended purpose.

98. Plaintiff could not have discovered any defect in the Omniscan, Magnevist, Optimark, MultiHance and/or ProHance through the exercise of reasonable care.

99. The Defendants, as manufacturers and/or distributors of the Omniscan, Magnevist, Optimark, MultiHance and/or ProHance are held to the level of knowledge of an expert in the field.

100. The warnings that were given by the Defendants were not accurate, clear, and/or were ambiguous.

101. The warnings that were given by the Defendants failed to properly warn physicians of the risk of development of NSF and subsequent death for patients with renal insufficiency associated with Omniscan, Magnevist, Optimark, MultiHance and/or ProHance.

102. The warnings that were given by the Defendants failed to properly warn consumers of the risk of development of NSF and subsequent death for patients with renal insufficiency associated with Omniscan, Magnevist, Optimark, MultiHance and/or ProHance.

103. Plaintiff, individually and through Plaintiff's prescribing/treating physician, reasonably relied on the skill, superior knowledge, and judgment of the Defendants.

32

104. The Defendants had a continuing duty to warn the Plaintiff and Plaintiff's prescribing/treating of the dangers associated with their respective gadolinium based contrast dyes.

105. Had Plaintiff received adequate warnings regarding the risks of the subject product, he would not have used it.

106. As a direct and proximate result of the defective and inappropriate warnings and the unreasonably dangerous and defective characteristics of Omniscan, Magnevist, Optimark, MultiHance and/or ProHance, and the Defendants' failure to comply with federal standards and requirements, Plaintiff suffered severe and permanent injuries, including but not limited to the development of NSF. Plaintiff endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiff incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise physically, emotionally, and economically injured. Plaintiff suffered severe pecuniary loss. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein. The injuries and damages alleged herein are permanent and will continue into the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT III

### STRICT LIABILITY IN TORT

(Against the GE, Bayer, Mallinckrodt and Bracco Defendants,
McKesson, Merry X-Ray and Does 1 – 25)

107. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

108. Defendants used and controlled toxic gadolinium for use and injection in humans.

109. Gadolinium is highly toxic, inherently dangerous, and ultra-hazardous to humans.

110. Defendants allowed and directed that toxic gadolinium be used and directed in humans.

111. As a direct and proximate result of the defective and inappropriate warnings and the unreasonably dangerous and defective characteristics of Omniscan, Magnevist, Optimark, MultiHance and/or ProHance, and the Defendants' failure to comply with federal standards and requirements,

-18-

COMPLAINT FOR DAMAGES

*33*

1   Plaintiff suffered severe and permanent injuries, including but not limited to the development of NSF.

2   Plaintiff endured substantial conscious pain and suffering, both physical and emotional in nature.

3   Plaintiff incurred significant expenses for medical care and treatment, suffered lost wages and earnings,

4   and was otherwise physically, emotionally, and economically injured.  Plaintiff suffered severe

5   pecuniary loss.  Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.  The

6   injuries and damages alleged herein are permanent and will continue into the future.

7       WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and

8   punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the

9   Court deems proper.

10                              COUNT IV

11                              NEGLIGENCE

12          (Against the GE, Bayer, Mallinckrodt and Bracco Defendants,

13                  McKesson, Merry X-Ray and Does 1 – 25)

14      112.   Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every

15   allegation set forth in the preceding paragraphs and further alleges as follows:

16      113.   At all times material hereto, the Defendants, and each of them individually, had a duty to

17   exercise reasonable care to consumers, including Plaintiff herein, in the design, development,

18   manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling, and/or sale of

19   Omniscan, Magnevist, Optimark, MultiHance and/or ProHance.

20      114.   The Defendants, and each of them individually, breached their duty of reasonable care to

21   Plaintiff in that they negligently designed, developed, manufactured, tested, inspected, packaged,

22   promoted, marketed, distributed, labeled, and/or sold Omniscan, Magnevist, Optimark, MultiHance

23   and/or ProHance.

24      115.   Plaintiff's injuries and damages alleged herein were and are the direct and proximate result

25   of the carelessness and negligence of the Defendants as follows:

26          a.  In their design, development, research, manufacture, testing, packaging, promotion,

27              marketing, sale, and/or distribution of their respective products;

28

-19-

COMPLAINT FOR DAMAGES

34

b.  In their failure to warn or instruct and/or adequately warn or adequately instruct, users of their respective gadolinium based contrast dyes, including Plaintiff herein, of the dangerous and defective characteristics of their respective gadolinium based contrast dyes;

c.  In their design, development, implementation, administration, supervision, and/or monitoring of clinical trials for their respective gadolinium based contrast dyes;

d.  In their promotion of their respective products in an overly aggressive, deceitful, and fraudulent manner, despite evidence as to the product's defective and dangerous characteristics due to their propensity to cause serious injury and/or death;

e.  In representing that their respective products were safe for their intended use when, in fact, the products were unsafe for their intended use;

f.  In failing to perform appropriate pre-market testing of their respective gadolinium based contrast dyes;

g.  In failing to perform appropriate post-market testing of the subject products; and

h.  In failing to perform appropriate post-market surveillance of the subject product.

116.  The Defendants knew or should have known that consumers such as Plaintiff herein would foreseeably suffer injury as a result of the Defendants' failure to exercise reasonable and ordinary care.

117.  As a direct and proximate result of the Defendants' carelessness and negligence, and the unreasonably dangerous and defective characteristics of Omniscan, Magnevist, Optimark, MultiHance and/or ProHance, and the Defendants' failure to comply with federal standards and requirements, Plaintiff suffered severe and permanent injuries, including but not limited to the development of NSF. Plaintiff endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiff incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise physically, emotionally, and economically injured. Plaintiff suffered severe pecuniary loss. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein. The injuries and damages alleged herein are permanent and will continue into the future.

-20-

COMPLAINT FOR DAMAGES

35

1      WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and

2   punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the

3   Court deems proper.

## COUNT V

## BREACH OF EXPRESS WARRANTY

(Against the GE, Bayer, Mallinckrodt and Bracco Defendants,

McKesson, Merry X-Ray and Does 1 – 25)

8      118.   Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every

9   allegation set forth in the preceding paragraphs and further alleges as follows:

10      119.   Defendants expressly warranted that their respective gadolinium based contrast dyes were

11   safe and fit for use by consumers and users including Plaintiff for their intended use, that they were of

12   merchantable quality, that they did not produce any dangerous side effects, and that they were

13   adequately tested and fit for their intended use.

14      120.   At the time of the making of the express warranties, the Defendants knew or should have

15   known of the purpose for which their respective gadolinium based contrast dyes were to be used and

16   warranted the same to be, in all respects, fit, safe, effective, and proper for such purpose.

17      121.   At the time of the making of the express warranties, Defendants knew or should have known

18   that, in fact, said representations and warranties were false, misleading, and untrue in that Omniscan,

19   Magnevist, Optimark, MultiHance and/or ProHance were not safe and fit for their intended use and, in

20   fact, produce serious injuries to consumers with renal impairment including the development of NSF

21   and death.

22      122.   Members of the medical community including, but not limited to, Plaintiff's healthcare

23   providers, reasonably relied upon the skill and judgment of Defendants, and upon said express

24   warranties in prescribing, recommending and/or administering Omniscan, Magnevist, Optimark,

25   MultiHance and/or ProHance.

26      123.   Plaintiff and Plaintiff's healthcare providers relied on the Defendants' express warranties.

27   Plaintiff was prescribed and did use gadolinium-based contrast dye and, upon information and belief,

28   Omniscan, Magnevist, Optimark, MultiHance and/or ProHance for their intended purpose.

-21-

COMPLAINT FOR DAMAGES

*36*

1    124.    Defendants breached said express warranties, in that Omniscan, Magnevist, Optimark,

2    MultiHance and/or ProHance were not safe and fit for their intended use and, in fact, cause debilitating

3    and potentially lethal side effects when administered in their recommended doses to patients with renal

4    impairment.

5    125.    As a direct and proximate result of the Defendants' breach of express warranty and the

6    unreasonably dangerous and defective characteristics of Omniscan, Magnevist, Optimark, MultiHance

7    and/or ProHance, and the Defendants' failure to comply with federal standards and requirements, the

8    Plaintiff suffered severe and permanent injuries, including but not limited to the development of NSF.

9    Plaintiff endured substantial conscious pain and suffering, both physical and emotional in nature.

10    Plaintiff incurred significant expenses for medical care and treatment, suffered lost wages and earnings,

11    and was otherwise physically, emotionally, and economically injured. Plaintiff suffered severe

12    pecuniary loss. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein. The

13    injuries and damages alleged herein are permanent and will continue into the future.

14.    WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and

15    punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the

16    Court deems proper.

17    ## COUNT VI

18    ## BREACH OF IMPLIED WARRANTY

19    **(Against the GE, Bayer, Mallinckrodt and Bracco Defendants,**

20    **McKesson, Merry X-Ray and Does 1 – 25)**

21    126.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every

22    allegation set forth in the preceding paragraphs and further alleges as follows:

23    127.    The Defendants designed, developed, manufactured, tested, packaged, promoted, marketed,

24    distributed, labeled and/or sold their respective gadolinium based contrast dyes for use in magnetic

25    imaging procedures.

26    128.    At the time that the Defendants designed, developed, manufactured, tested, packaged,

27    promoted, marketed, distributed, labeled and/or sold their respective gadolinium based contrast dyes,

28

-22-

COMPLAINT FOR DAMAGES

37

06-12-2008   10:46AM   FROM-TIME MACHINE-LA                    +2134822899         T-508  P.031/041  F-281

1  they knew of the use for which their respective products were intended and impliedly warranted them to

2  be of merchantable quality and safe and fit for such use.

3     129.    Plaintiff, individually and through Plaintiff's prescribing/treating physician, reasonably

4  relied upon the skill, superior knowledge, and judgment of the Defendants.

5     130.    Plaintiff was prescribed and did use gadolinium-based contrast dye and, upon information

6  and belief, Omniscan, Magnevist, Optimark, MultiHance and/or ProHance for their intended purpose.

7     131.    Due to the Defendants' wrongful conduct as alleged herein, Plaintiff could not have known

8  about the nature of the risks and side effects associated with Omniscan, Magnevist, Optimark,

9  MultiHance and/or ProHance until after Plaintiff used them.

10    132.    Contrary to the implied warranties for the Omniscan, Magnevist, Optimark, MultiHance

11  and/or ProHance, the products were not of merchantable quality and were not safe or fit for their

12  intended uses and purposes, as alleged herein.

13    133.    As a direct and proximate result of the Defendants' breach of implied warranty and the

14  unreasonably dangerous and defective characteristics of Omniscan, Magnevist, Optimark, MultiHance

15  and/or ProHance, and the Defendants' failure to comply with federal standards and requirements,

16  Plaintiff suffered severe and permanent injuries, including but not limited to the development of NSF.

17  Plaintiff endured substantial conscious pain and suffering, both physical and emotional in nature.

18  Plaintiff incurred significant expenses for medical care and treatment, suffered lost wages and earnings,

19  and was otherwise physically, emotionally, and economically injured.  Plaintiff suffered severe

20  pecuniary loss.  Plaintiff seeks actual and punitive damages from the Defendants as alleged herein.  The

21  injuries and damages alleged herein are permanent and will continue into the future.

22        WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and

23  punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the

24  Court deems proper.

25                          COUNT VII

26              DECEIT BY CONCEALMENT – VIOLATION OF

27              CALIFORNIA CIVIL CODE §§ 1709, 1710

28              (Against the GE, Bayer, Mallinckrodt and Bracco Defendants,

-23-

COMPLAINT FOR DAMAGES

38

McKesson, Merry X-Ray and Does 1 – 25)

134.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

135.    The Defendants had actual knowledge based upon studies, published reports, and clinical experience, that their respective gadolinium based contrast dyes created an unreasonable risk of serious bodily injury and death when administered to patients with renal insufficiency, or should have known such information.

136.    The Defendants intentionally omitted, concealed and suppressed this information from the product labeling, promoting, and advertising of their respective gadolinium based contrast dyes and instead labeled, promoted, and advertised their respective products as safe in order to avoid losses and sustain profits in their sale to consumers, as Defendants knew that Plaintiff's healthcare providers would not have exposed Plaintiff to a gadolinium based contrast agent had Plaintiff's healthcare providers known or otherwise been aware of the true facts concerning gadolinium based contrast agents.

137.    Plaintiff and Plaintiff's healthcare providers reasonably relied, to their detriment, upon the Defendants' fraudulent actions and omissions in their representations concerning the risks of their respective gadolinium based contrast dyes in the labeling, advertising, and promoting of said products.

138.    Plaintiff and Plaintiff's healthcare providers reasonably relied upon the Defendants' representations to them that their respective gadolinium based contrast dyes were safe for human consumption and/or use and that the Defendants' labeling, advertising, and promotions fully described all known risks of the respective products.

139.    The Defendants' actions, concealment and omissions as described herein demonstrate a flagrant disregard for human life, so as to warrant the imposition of punitive damages.

140.    As a direct and proximate result of the Defendants' intentional and wrongful conduct, and the unreasonably dangerous and defective characteristics of Omniscan, Magnevist, Optimark, MultiHance and/or ProHance, and the Defendants' failure to comply with federal standards and requirements, Plaintiff suffered severe and permanent injuries, including but not limited to the development of NSF. Plaintiff endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiff incurred significant expenses for medical care and treatment, suffered lost

-24-

39

1   wages and earnings, and was otherwise physically, emotionally, and economically injured. Plaintiff

2   suffered severe pecuniary loss. Plaintiff seeks actual and punitive damages from the Defendants as

3   alleged herein. The injuries and damages alleged herein are permanent and will continue into the

4   future.

5       WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and

6   punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the

7   Court deems proper.

8                              **COUNT VIII**

9              **NEGLIGENT MISREPRESENTATION AND CONCEALMENT**

10           **(Against the GE, Bayer, Mallinckrodt and Bracco Defendants,**

11                    **McKesson, Merry X-Ray and Does 1 – 25)**

12      141.   Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every

13   allegation set forth in the preceding paragraphs and further alleges as follows:

14      142.   The Defendants labeled, promoted, and advertised their gadolinium based contrast agents as

15   safe, fit and effective for use in humans, including humans with renal insufficiency.

16      143.   The Defendants made the foregoing representations without any reasonable ground for

17   believing them to be true. In supplying the false information, Defendants failed to exercise reasonable

18   care in labeling, promoting and advertising their gadolinium based contrast agents.

19      144.   The representations made by Defendants were, in fact, false in that gadolinium based

20   contrast agents are not safe, fit and effective for use in humans, especially in humans with renal

21   insufficiency.

22      145.   Plaintiff's healthcare providers would not have exposed Plaintiff to a gadolinium based

23   contrast agent had Plaintiff's healthcare providers known or otherwise been aware of the true facts

24   concerning gadolinium based contrast agents.

25      146.   Plaintiff and Plaintiff's healthcare providers reasonably relied, to their detriment, upon the

26   Defendants' actions, concealment and omissions in their representations concerning the risks of their

27   respective gadolinium based contrast dyes in the labeling, advertising, and promoting of said products.

28

-25-

COMPLAINT FOR DAMAGES

40

147.   Plaintiff and Plaintiff's healthcare providers reasonably relied upon the Defendants' representations to them that their respective gadolinium based contrast dyes were safe for human consumption and/or use and that the Defendants' labeling, advertising, and promotions fully described all known risks of the respective products.

148.   As a direct and proximate result of the Defendants' negligent and wrongful conduct, and the unreasonably dangerous and defective characteristics of Omniscan, Magnevist, Optimark, MultiHance and/or ProHance, and the Defendants' failure to comply with federal standards and requirements, Plaintiff suffered severe and permanent injuries, including but not limited to the development of NSF. Plaintiff endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiff incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise physically, emotionally, and economically injured. Plaintiff suffered severe pecuniary loss. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein. The injuries and damages alleged herein are permanent and will continue into the future.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT IX

## VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200

### (Against the GE, Bayer, Mallinckrodt and Bracco Defendants,

### McKesson, Merry X-Ray and Does 1 – 25)

149.   Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

150.   Plaintiff brings this cause of action pursuant to California *Business & Professions Code* § 17204, in Plaintiff's individual capacity, and not on behalf of the general public.

151.   California *Business & Professions Code* § 17200 provides that unfair competition shall mean and include "all unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising".

-26-

COMPLAINT FOR DAMAGES

*41*

152.   The acts and practices described above were and are likely to mislead the general public and therefore constitute unfair business practices within the meaning of California *Business & Professions Code* § 17200. The acts of untrue and misleading advertising are, by definition, violations of California *Business & Professions Code* § 17200. This conduct includes, but is not limited to:

    a.  Representing to Plaintiff, Plaintiff's physicians, and the general public that gadolinium based contrast agents were safe, fit, and effective for human use, even in humans with renal insufficiency, knowing that said representations were false, and concealing from Plaintiff, Plaintiff's physicians, and the general public that gadolinium based contrast agents had a serious propensity to cause injuries to users, especially those with renal insufficiency;

    b.  Engaging in advertising programs designed to create the image, impression and belief by consumers and physicians that gadolinium based contrast agents were safe for human use, even in humans with renal insufficiency, even though the Defendants knew this to be false, and even though the Defendants had no reasonable grounds to believe them to be true; and

    c.  Purposely downplaying and understating the health hazards and risks associated with gadolinium based contrast agents.

153.   These practices constitute unlawful, unfair and fraudulent business acts or practices, within the meaning of California *Business & Professions Code* § 17200, as well as unfair, deceptive, untrue and misleading advertising as prohibited by California *Business & Professions Code* § 17500.

154.   The unlawful, unfair and fraudulent business practices of Defendants described above present a continuing threat to members of the public in that Defendants continue to engage in the conduct described therein.

155.   As a result of their conduct described above, Defendants have been and will be unjustly enriched. Specifically, Defendants have been unjustly enriched by receipt of ill-gotten gains from the sale of gadolinium based contrast agents in California, sold in large part as a result of the acts and omissions described herein.

42

156. Because of fraudulent misrepresentations made by Defendants as detailed above, and the inherently unfair practice of committing a fraud against the public by intentionally misrepresenting and concealing material information, the acts of Defendants described herein constitute unfair or fraudulent business practices.

157. Plaintiff, pursuant to California *Business & Professions Code* § 17203, seeks an order of this court compelling the Defendants to provide restitution and injunctive relief calling for Defendants, and each of them, to cease unfair business practices in the future.

## COUNT X

### VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17500

(Against the GE, Bayer, Mallinckrodt and Bracco Defendants,

McKesson, Merry X-Ray and Does 1 – 25)

158. Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

159. Plaintiff brings this cause of action pursuant to California *Business & Professions Code* § 17500, in Plaintiff's individual capacity and not on behalf of the general public.

160. California *Business & Professions Code* § 17500 provides that it is unlawful for any person, firm, corporation or association to dispose of property or perform services, or to induce the public to enter into any obligation relating thereto, through the use of untrue or misleading statements.

161. At all times herein alleged Defendants have committed acts of disseminating untrue and misleading statements as defined by California *Business & Professions Code* § 17500 by engaging in the following acts and practices with intent to induce members of the public, including healthcare professionals, to purchase and use gadolinium based contrast agents:

a. Representing to Plaintiff, Plaintiff's physicians, and the general public that gadolinium based contrast agents were safe, fit, and effective for human use, even in humans with renal insufficiency, knowing that said representations were false, and concealing from Plaintiff, Plaintiff's physicians, and the general public that gadolinium based contrast agents had a serious propensity to cause injuries to users, especially those with renal insufficiency;

-28-

COMPLAINT FOR DAMAGES

43

b.  Engaging in advertising programs designed to create the image, impression and belief by consumers and physicians that gadolinium based contrast agents were safe for human use, even in humans with renal insufficiency, even though the Defendants knew this to be false, and even though the Defendants had no reasonable grounds to believe them to be true; and

c.  Purposely downplaying and understating the health hazards and risks associated with gadolinium based contrast agents.

162.   The foregoing practices constitute false and misleading advertising within the meaning of California *Business & Professions Code* § 17500.

163.   The acts of untrue and misleading statements by Defendants described herein above present a continuing threat to members of the public in that the acts alleged herein are continuous and ongoing, and the public will continue to suffer the harm alleged herein.

164.   As a result of their conduct described above, Defendants have been and will be unjustly enriched.  Specifically, Defendants have been unjustly enriched by receipt of ill-gotten gains from the sale and prescription of gadolinium based contrast agents in California, sold in large part as a result of the acts and omissions described herein.

165.   Pursuant to California *Business & Professions Code* § 17535, Plaintiff seeks an order of this court compelling the Defendants to provide restitution and injunctive relief calling for Defendants, and each of them, to cease unfair business practices in the future.

166.   Plaintiff seeks restitution of the monies collected by Defendants, and each of them, and other injunctive relief to cease such false and misleading advertising in the future.

**COUNT XI**

**VIOLATION OF CIVIL CODE § 1750 ET. SEQ.**

(Against the GE, Bayer, Mallinckrodt and Bracco Defendants,

McKesson, Merry X-Ray and Does 1 – 25)

167.   Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

-29-

COMPLAINT FOR DAMAGES

44

1    168.    Plaintiff is informed and believe and thereon alleges that Defendan

2    the acts and misconduct alleged herein, violated the Consumers Legal Remedi

3    *Code* §§ 1750 et. seq. ("CLRA").

4    169.    Plaintiff hereby seeks injunctive relief as appropriate against Defen

5    for their violations of California *Civil Code* §§ 1750 et. seq. The CLRA applie

6    and conduct described herein because it extends to transactions which are inter

7    have resulted, in the sale of goods to consumers.

8    170.    Plaintiff is a "consumer" within the meaning of California *Civil Co*

9    171.    Defendants have violated, and continue to violate, the CLRA in rep

10   characteristics and benefits which they do not have in violation of California C

11   172.    At all times herein alleged Defendants have committed acts of diss

12   misleading statements as defined by California *Civil Code* § 1770 by engaging

13   practices with intent to induce members of the public, including healthcare pro

14   use gadolinium based contrast agents: but is not limited to:

15         a.   Representing to Plaintiff, Plaintiff's physicians, and the general

16              based contrast agents were safe, fit, and effective for human use

17              renal insufficiency, knowing that said representations were fals

18              Plaintiff, Plaintiff's physicians, and the general public that gado

19              agents had a serious propensity to cause injuries to users, especi

20              insufficiency;

21         b.   Engaging in advertising programs designed to create the image,

22              consumers and physicians that gadolinium based contrast agent

23              use, even in humans with renal insufficiency, even though the

24              be false, and even though the Defendants had no reasonable gro

25              be true; and

26         c.   Purposely downplaying and understating the health hazards and

27              gadolinium based contrast agents.

28

-30-

COMPLAINT FOR DAMAGES

45

173.    The foregoing practices constitute false and misleading advertising and representations within the meaning of California *Civil Code* § 1770. The acts of untrue and misleading statements by Defendants described herein present a continuing threat to members of the public and individual consumers in that the acts alleged herein are continuous and ongoing, and the public and individual consumers will continue to suffer harm as alleged herein.

174.    Unless Defendants are enjoined from continuing to engage in these violations of the CLRA, Plaintiff and members of the general public will continue to be harmed by the wrongful actions and conduct of Defendants.

175.    Pursuant to California *Civil Code* § 1780, Plaintiff seeks an order of this court for injunctive relief calling for Defendants, and each of them, to cease such deceptive business practices in the future.

## PUNITIVE DAMAGES ALLEGATIONS

176.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

177.    At all times material hereto, the Defendants knew or should have known that their respective gadolinium based contrast dyes could result in the development of NSF and death when administered to patients with renal insufficiency, such as Plaintiff.

178.    At all times material hereto, the Defendants attempted to misrepresent and did misrepresent facts concerning the safety of their respective gadolinium based contrast dyes.

179.    Defendants' misrepresentations included knowingly withholding material information from the medical community and the public, including Plaintiff herein, concerning the safety of their respective gadolinium based contrast dyes.

180.    At all times material hereto, the Defendants knew and recklessly disregarded the fact that their respective gadolinium based contrast dyes could result in the development of NSF and death when administered to patients with renal insufficiency, such as Plaintiff.

181.    Notwithstanding the foregoing, the Defendants continued to aggressively market their respective gadolinium based contrast dyes to consumers, including Plaintiff herein, without disclosing the fact that said products could result in the development of NSF and death when administered to patients with renal insufficiency, such as Plaintiff.

COMPLAINT FOR DAMAGES

46

182.    The Defendants knew of the defective and unreasonably dangerous nature of their respective gadolinium based contrast dies as set forth herein, but continued to design, develop, manufacture, market, distribute, and sell them so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiff herein, in conscious and/or negligent disregard of the foreseeable risks of NSF and death.

183.    Defendants intentionally concealed and/or recklessly failed to disclose to the public, including Plaintiff herein, the potentially life threatening side effects of their respective gadolinium based contrast dyes in order to ensure continued and increased sales.

184.    The Defendants' intentional and/or reckless failure to disclose information deprived Plaintiff of necessary information to enable him and his healthcare providers to weigh the true risks of using the Defendants' respective gadolinium based contrast dyes against the benefits.

185.    As a direct and proximate result of the Defendants' conscious and deliberate disregard for the rights and safety of consumers such as the Plaintiff, and the unreasonably dangerous and defective characteristics of Omniscan, Magnevist, Optimark, MultiHance and/or ProHance, and the Defendants' failure to comply with federal standards and requirements, Plaintiff suffered severe and permanent injuries, including but not limited to the development of NSF. Plaintiff endured substantial conscious pain and suffering, both physical and emotional in nature. Plaintiff incurred significant expenses for medical care and treatment, suffered lost wages and earnings, and was otherwise physically, emotionally, and economically injured. Plaintiff suffered severe pecuniary loss. Plaintiff seeks actual and punitive damages from the Defendants as alleged herein. The injuries and damages alleged herein are permanent and will continue into the future.

The aforesaid conduct of the Defendants was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers, including Plaintiff herein, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish the Defendants and deter them from similar conduct in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against each of the Defendants as follows:

COMPLAINT FOR DAMAGES

a.  Awarding actual damages to the Plaintiff incidental to the Plaintiff's use of gadolinium-based contrast agents and, upon information and belief, Omniscan, Magnevist, Optimark, MultiHance and/or ProHance in an amount to be determined at trial;

b.  Awarding treble and/or punitive damages to the Plaintiff;

c.  Awarding pre-judgment and post-judgment interest to the Plaintiff;

d.  Awarding the costs and expenses of this litigation to the Plaintiff;

e.  Awarding reasonable attorneys' fees and costs to the Plaintiff as provided by law;

f.  Granting all such other relief as the Court deems necessary, just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all Counts and as to all Issues.

Dated: May 30, 2008

SKIKOS, CRAWFORD, SKIKOS,
JOSEPH & MILLICAN

By: _____

STEVEN J. SKIKOS
KATHLEEN N. MILLICAN
Attorneys for Plaintiff

and

FIBICH, HAMPTON & LEEBRON LLP
Kenneth T. Fibich, Texas Bar No: 06952600
Russell S. Briggs, Texas Bar No: 02987720
5 Houston Center
1401 McKinney, Suite 1800
Houston, TX  77010-9998
(713) 751-0025
(713) 751-0030 fax
*Pro hac vice* application pending

-33-

COMPLAINT FOR DAMAGES

48

## CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I declare that I am a citizen of the United States and a resident of Los Angeles, California or employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is TUCKER ELLIS & WEST LLP, 515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071-2223

On June 16, 2008, I served the foregoing document entitled *DEFENDANTS BRACCO DIAGNOSTIC INC. AND BRACCO RESEARCH USA INC.'S NOTICE OF REMOVAL* by placing () the original (X) a true and correct copy, enclosed in a sealed envelope(s), addressed as follows:

### SEE ATTACHED SERVICE LIST

(X)    I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at Los Angeles, California.

( )    By Certified mail service return receipt requested, I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at Los Angeles, California.

( )    By Personal Service, I caused such envelope(s) to be delivered by hand to the individuals so indicated at the address listed.

( )    By overnight courier, I caused the above-referenced document(s) to be delivered to an overnight courier service for delivery to the above address(es) or on the attached service list.

( )    By facsimile machine, I caused the above-referenced document(s) to be transmitted to the person(s) named above or on the attached service list at the facsimile numbers given thereat.

(X)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 16, 2008, at Los Angeles, California.

Elizabeth Munnerlyn

---

CERTIFICATION OF SERVICE

LAimanage/11255/00002/610061/1

LAimanage/11255/00002/610061/1

<u>SERVICE LIST</u>

1

2  Steven J. Skikos, Esq.
   Kathleen N. Millican
3  SKIKOS, CRAWFORD, SKIKOS, JOSEPH & MILLIAN
4  625 Market Street, 11th Floor
   San Francisco, CA 94105
5  Te: (415) 546-7300
6  Fax: (415) 546-7301

7

8  *Attorneys for Plaintiffs*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Tucker Ellis
000 Wilshire
uite 1800
os Angeles,

LAimanage/11255/00002/610061/1

## CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I declare that I am a citizen of the United States and a resident of Los Angeles, California or employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is TUCKER ELLIS & WEST LLP, 515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071-2223

On June 16, 2008, I served the foregoing document entitled *CERTIFICATE OF SERVICE OF NOTICE TO ADVERSE PARTY OF REMOVAL OF ACTION TO FEDERAL COURT* by placing () the original (X) a true and correct copy, enclosed in a sealed envelope(s), addressed as follows:

### SEE ATTACHED SERVICE LIST

(X)    I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at Los Angeles, California.

( )    By Certified mail service return receipt requested, I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at Los Angeles, California.

( )    By Personal Service, I caused such envelope(s) to be delivered by hand to the individuals so indicated at the address listed.

( )    By overnight courier, I caused the above-referenced document(s) to be delivered to an overnight courier service for delivery to the above address(es) or on the attached service list.

( )    By facsimile machine, I caused the above-referenced document(s) to be transmitted to the person(s) named above or on the attached service list at the facsimile numbers given thereat.

(X)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 16, 2008, at Los Angeles, California.

Elizabeth Munnerlyn

CERTIFICATION OF SERVICE

Tucker Ellis & West LLP
515 South Flower, Forty-
Second Floor, Los Angeles
CA 90071-2223

LAimanage/11255/00002/610061/1

LAimanage/11255/00002/610061/1

SERVICE LIST

1

2  Steven J. Skikos, Esq.
   Kathleen N. Millican
3  SKIKOS, CRAWFORD, SKIKOS, JOSEPH & MILLIAN
4  625 Market Street, 11th Floor
   San Francisco, CA 94105
5  Te: (415) 546-7300
6  Fax: (415) 546-7301

7
   *Attorneys for Plaintiffs*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Tucker Ellis
1000 Wilshire
Suite 1800
Los Angeles,

LAimanage/11255/00002/610061/1